**Rafael E. BELLO, Petitioner,**

v.

**PEOPLE of the State of New York, Respondent.**

No. 93–CV–134A.

United States District Court, W.D. New York.

May 25, 1995.

Rafael E. Bello, New York City, pro se.

Kevin M. Dillon, Dist. Atty. for County of Erie (Eleanor T. Kubiniec, Asst. Dist. Atty., of counsel), Buffalo, NY, for respondent.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1)(B) on June 8, 1993. On April 20, 1995, Magistrate Judge Foschio filed a Report and Recommendation recommending that petitioner's habeas corpus petition be dismissed and that respondent's motion for summary judgment be dismissed as moot.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, petitioner's habeas corpus petition is dismissed and respondent's motion for summary judgment is dismissed as moot.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

Petitioner, Rafael E. Bello, initiated this action requesting habeas corpus relief under 28 U.S.C. § 2254 on February 16, 1993. The matter was referred to the undersigned by the Hon. Richard J. Arcara, on June 8, 1993, for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### *BACKGROUND*

Bello was indicted by an Erie County Grand Jury, on May 18, 1990, in a seven-count indictment charging possession and sale of controlled substances. Specifically, Bello was charged with a co-defendant, Edelmira Lugo, with criminal possession of a controlled substance in the fourth degree (cocaine), criminal possession of marijuana in the fourth degree, criminal possession of a controlled substance in the seventh degree (diazepam), and criminally using drug para-

phernalia in the second degree. Bello alone was charged with criminal possession of a controlled substance in the first degree (cocaine), criminal possession of a controlled substance in the third degree (cocaine), and criminal sale of a controlled substance in the third degree (cocaine). Bello was arraigned before New York State Supreme Court Justice Frederick M. Marshall on June 1, 1990, pleading not guilty to all counts. Bello was represented by retained counsel, Thomas Eoannou, of counsel to Nicholas Costantino.

Prior to trial, on September 25, 1990, Bello appeared before Erie County Court Judge Timothy J. Drury, with counsel Nicholas Costantino, and pled guilty to criminal possession of a controlled substance in the second degree, under count five of the indictment, as a lesser included offense. Thereafter, on November 16, 1990, Bello was sentenced by Judge Drury to a minimum of five years and a maximum of life imprisonment.

Bello, then represented by the Legal Aid Bureau of Buffalo, appealed his conviction to the Appellate Division, New York State Supreme Court, Fourth Department. He initially raised two grounds for reversal: (1) that he did not waive his right to appeal when he entered a guilty plea, and (2) that his sentence should be modified by the court in the interest of justice.[1] Bello also submitted a *pro se* supplemental brief arguing that he was denied effective assistance of counsel. The Appellate Division unanimously affirmed the conviction on November 18, 1992. *People v. Bello*, 187 A.D.2d 1035, 593 N.Y.S.2d 480 (App.Div. 4th Dep't.1992). Leave to appeal to the New York State Court of Appeals was denied on February 2, 1993. *People v. Bello*, 81 N.Y.2d 837, 595 N.Y.S.2d 736, 611 N.E.2d 775 (1993).

While his direct appeal was pending, Bello brought a motion, pursuant to New York Criminal Procedure Law § 440.20 to set aside his sentence on the ground that it was excessive. The motion was denied by Judge Drury on February 10, 1992. Bello did not appeal the denial.

On February 16, 1993, Bello filed, pursuant to 28 U.S.C. § 2254, a petition for a writ of habeas corpus in this court alleging four grounds for relief, including ineffective assistance of counsel, violation of his right to due process based on the fact that he did not voluntarily, knowingly, and intelligently waive his right to appeal his conviction, violation of his right to due process based on the fact that his guilty plea was not knowing, intelligent, or voluntary because of ineffective assistance of counsel, and misconduct of a police officer by interrogating a co-defendant without knowledge or consent of counsel compromising the effective assistance of counsel because of a resulting conflict of interest.

On December 14, 1993, Respondent filed a motion for summary judgment on the ground that there was no genuine issue of material fact present, and that the Respondent was entitled to judgment as a matter of law.[2] Petitioner responded to the motion for summary judgment on December 30, 1993, arguing that it was clear that he had been denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution by having counsel who had a conflict of interest.

Based on a review of the papers submitted in this matter, along with the state court record, the petition should be DISMISSED. Accordingly, the court finds that Respondent's motion for summary judgment is moot.

### FACTS

Bello was indicted, with another co-defendant, Edelmira Lugo, his fiancee, on May 18, 1990, with possession of cocaine, marijuana, and diazepam, with the use of drug paraphernalia, and with the sale of cocaine. Bello retained counsel, and Thomas Eoannou, along with Nicholas Costantino, represented both Bello and Lugo.

---

1. As discussed *infra*, at p. 1054, Respondent asserts that Bello, as a condition of the plea, waived his right to any appeal.

2. Although, in a habeas corpus petition, the proper respondent is the authority having custo-

dy of a petitioner, 28 U.S.C. § 2243, in this case, Respondent has not objected to the absence of the properly named respondent.

Bello eventually pled guilty to Count Five of the Indictment which charged possession of approximately nine ounces of cocaine on March 25, 1990, where it was alleged that Bello brought the cocaine on that date to a location on Niagara Street in Buffalo, New York and asked the occupants to store it there. (T. 9).[3] His co-defendant, Lugo, pled guilty at the same time to a Class A misdemeanor, possession of a controlled substance in the Seventh Degree. (P. 28).[4]

During the plea colloquy, and prior to the entrance of the plea, the prosecutor, Glenn Pincus, asked the court to raise two issues in his discussion with Bello and Lugo. (P. 3). First, he requested that the court advise Bello and Lugo that, by entering a plea, they would be waiving their right to appeal the pleas. (P. 3). Second, Mr. Pincus asked that the court advise Bello and Lugo that, as they were both represented by the same attorney, there was a potential conflict of interest. (P. 3–4). Mr. Pincus further requested that their understanding of this potential conflict and their right to separate counsel be placed on the record. (P. 3). Judge Drury then related to Bello and Lugo the potential conflict of interest by their both being represented by the same counsel. He stated that he could not "turn a blind eye to the fact that Mr. Eoannou has also conferred with you, as well as Mr. Costantino," and that Mr. Eoannou had also represented one Laima Trincus who would have been one of the main witnesses against both Bello and Lugo had the case gone to trial. (P. 4–5). Judge Drury emphasized that by Mr. Eoannou assisting Mr. Costantino in his representation of Bello and Lugo, while at the same time representing the individual who would be the chief witness against Bello and Lugo, a conflict of interest existed. (P. 5). Judge Drury then went on to state that Bello and Lugo could waive the conflict, but that he was advising them that this conflict existed, and that they were entitled to separate attorneys. (P. 5–6).

Mr. Eoannou clarified the conflict for the court. According to Mr. Eoannou, initially he and Mr. Costantino represented Bello, Lugo, and Laima Trincus in a joint defense effort against a search warrant at issue in the case. (P. 6). During the pendency of this effort, police officer Roger Masters, unbeknownst to either Mr. Eoannou or Mr. Costantino, allegedly approached Laima Trincus to privately negotiate a "deal for a dismissal," (P. 6), which Eoannou learned of after the fact. (P. 6). Apparently, Laima Trincus discussed this offer with both Bello and Lugo, and the three defendants requested that Mr. Eoannou continue his representation and advice relative to a challenge as to the search warrant at issue. (P. 7). Mr. Eoannou further stated that there was never any time he believed that Laima Trincus was going to be testifying against Bello and Lugo, and that he was never aware that law enforcement had approached Laima Trincus until later. (P. 7). According to Mr. Eoannou, Officer Masters then allegedly told Eoannou that he had believed that Laima Trincus had a different attorney. (P. 7).

The court responded that Bello and Lugo had a right to know of these facts, as it would constitute another issue they would be waiving as a result of the plea. (P. 7). The court then explained to Bello and Lugo that it was not "the best idea," for one counsel to represent two clients, especially where there is a potential for unequal findings of guilt, and offered to adjourn the hearing so that they could obtain or be appointed separate counsel. (P. 7, 9). However, both Bello and Lugo indicated that, while they understood this potential conflict of interest, they did not want to obtain new counsel, did not require additional time to consider the matter, and were willing to move forward with Mr. Costantino as their counsel, with Mr. Eoannou's participation. (P. 9–11).

The court then conducted a plea colloquy with both Bello and Lugo, separately, and expressly stated that the plea was conditioned on their waiving their right to appeal the conviction, and that they waived any right to challenge any impropriety by Officer

---

**3.** T. references are to the page number of the transcript of the sentencing proceedings, dated November 16, 1990.

**4.** P. references are to the page number of the transcript of the plea proceedings, dated September 25, 1990.

Masters. (P. 13). Mr. Costantino indicated that these conditions were understood, and, later, during the plea colloquy, Bello also stated that he understood that he would not be able to contest Officer Masters' actions if he pled guilty. (P. 13, 19). Bello then pled guilty to Count Five of the Indictment. (P. 19).

### DISCUSSION

In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, a federal district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution, or any laws and treaties of the United States. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), *reh'g denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). However, a state prisoner's federal habeas corpus petition should be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

In reviewing habeas corpus petitions, federal courts do not function as appellate courts to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts, but rather, the court only determines whether the proceedings in the state court amount to a violation of federal constitutional rights. *Coleman, supra.* Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). A state prisoner applying for a writ of habeas corpus under 28 U.S.C. § 2254 is not entitled to an evidentiary hearing by the federal court, but the granting of a hearing is within the discretion of the federal district court. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The state court's determination, however, is presumed to be correct unless one of the seven specified conditions pursuant to 28 U.S.C. § 2254(d) is found to exist or unless the federal habeas court concludes that the relevant state court

determination is not fairly supported by the record. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Absent these factors, the burden rests on the petitioner to establish, by clear and convincing evidence, that the factual determination is erroneous. *Sumner, supra.*

In this case, the court concludes that, as to the issues raised by Bello, none of the statutory exceptions apply, and, therefore, the factual determination at the state level is presumed to be correct and no evidentiary hearing is required for this court to reach the merits of the petition.

As a preliminary matter, Respondent claims that Petitioner has failed to exhaust his available state remedies, and that, therefore, the petition must be dismissed for failure to exhaust such remedies.

Exhaustion of state remedies requires that petitioners fairly present federal claims to the state courts in order to give the state the "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). A state prisoner's federal habeas petition should be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Further, if a petitioner fails to exhaust his state remedies, and the court to which the petitioner would be required to present his claims in order to meet exhaustion requirements would find the claims procedurally barred, there is a procedural default for the purpose of federal habeas corpus. *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991).

In this case, the court finds that the issues raised in Petitioner's habeas corpus petition were raised at the state level, either by his assigned counsel's brief, or by Petitioner's *pro se* supplemental brief. The court notes that while Respondent, in its answer, contends that Petitioner did not appeal his 440 motion, in which he raised the claim that his sentence was excessive, and that therefore, that claim remains unexhausted, Peti-

tioner did not raise the sentencing issue set forth in the 440 motion as a claim in his habeas corpus petition. Respondent's other argument is that at no time prior to sentence did the Petitioner seek to have the trial court set aside his guilty plea premised upon any of the grounds raised in the petition. However, as stated, Petitioner, in his direct appeal, both by his counsel's brief, and in his supplemental *pro se* submission, raised the same grounds as are in his petition, and, therefore, the claims are exhausted for habeas corpus purposes.

In this case, Bello has raised four grounds in his petition, of which two assert that his guilty plea was not voluntarily, knowingly, and intelligently made because of ineffective assistance of counsel, and the other two of which contend that he was denied ineffective assistance of counsel by virtue of counsel's conflict of interest in representing Bello and a prosecution witness. The court notes that, while these two grounds stem from the allegation that a co-defendant "was tampered with by a detective, resulting in the co-defendant becoming a prosecution witness, creating divided loyalties of representation by retained counsel," who also represented the co-defendant, *see* Ground One of the Petition, at p. 5, Bello's fourth ground relating to this same allegation states that the co-defendant was interrogated by the detective "without the knowledge and consent of said counsel." *See* Ground Four of the Petition, at p. 6. Respondent argues that Bello waived all claims by entering his guilty plea.

A criminal defendant may waive his right to appeal as a condition of a plea bargain. *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992); *Magee v. Romano*, 799 F.Supp. 296, 299 (E.D.N.Y.1992). However, while the waiver prevents a criminal defendant from taking a direct appeal on most grounds, it does not preclude challenging the voluntariness of his plea, as such a claim may not be waived. *Magee, supra*, at 299. Further, a significant factor in determining the voluntariness of a plea is whether the plea was based on the advice of competent counsel. *Willbright v. Smith*, 745 F.2d 779, 781 (2d Cir.1984).

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). To determine the voluntariness of a plea, the court should consider all of the relevant circumstances, including the possibility of a heavier sentence following a guilty verdict after trial, the defendant's previous contact with the criminal justice system, and whether the court addressed the defendant and explained his options. *Magee, supra*, at 300.

In this case, the court, both during the plea colloquy and at sentencing, explained to Bello his options. The court specifically asked Bello if he was entering the plea so that he could avoid trial and eliminate the possibility of being convicted on a higher degree of crime, if he realized that a plea of guilty was a conviction just as if he had been convicted by a jury, if Bello understood that he was waiving his right to a trial by jury, and if he understood the sentence that he could receive. Bello stated to the judge that he fully understood the consequences of taking the plea. (P. 15–16). Further, no issue was ever raised of Bello as to his competence in taking the plea. As such, the only remaining issue is whether Bello's counsel's advice was so ineffective as to render Bello's plea involuntary.

Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)).

The Court in *Hill v. Lockhart, supra,* held that the standard developed in *Strickland v. Washington* for evaluating claims of ineffective assistance of counsel was applicable to ineffective assistance of counsel claims arising out of the plea process. The standard for evaluating claims of ineffectiveness of counsel, as set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is whether the attorney provided "reasonably effective assistance" when considering the totality of the circumstances. *Strickland* developed a two part test to assess the adequacy of counsel's representation under this standard. First, a defendant is required to establish that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. In order to show a deficient performance by counsel, a defendant must demonstrate that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland, supra,* at 687, 104 S.Ct. at 2064. In relation to the plea process, the second prong of the test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill, supra,* at 59, 106 S.Ct. at 370. In order to satisfy this requirement, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill, supra,* at 59, 106 S.Ct. at 370.

In this case, Bello claims that the errors made by counsel were that a waiver of his right to appeal was appended to his guilty plea by the ill advice of his counsel, and that, second, counsel advised him that he should plead guilty or face a significantly greater penal sanction while, at the time of this advice, counsel was simultaneously representing a co-defendant who had become a prosecution witness.

As to the first issue, there is no evidence that Bello's counsel insisted that a waiver of his right to appeal become a part of Bello's guilty plea, rather, according to the record, this was simply part of the plea offered to Bello, which Bello fully understood, and agreed to accept at the time of the entrance of his guilty plea. As a criminal defendant may waive his right to appeal as a condition of a plea bargain, *see Magee, supra,* the fact that Bello did so does not set forth a constitutional violation. As noted, there is no evidence in the record that such a decision was based on advice of his counsel.

Nor does the court find merit as to Bello's claim that he did not voluntarily plead guilty because his advice from counsel was given while counsel was allegedly representing a prosecution witness. In order to establish a claim of ineffective assistance of counsel based on a conflict of interest, a petitioner who entered a guilty plea must establish, (1) that there was an actual conflict of interest, and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendant. *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). In this case, during the plea colloquy, Mr. Eoannou represented to the court that he and Mr. Costantino had originally represented Bello, Lugo, and their co-defendant Laima Trincus in the matter. While preparing a suppression motion relative to the search warrant used in the case, according to Mr. Eoannou, Laima Trincus was approached by Officer Masters, without the knowledge or consent of counsel, to privately negotiate a dismissal. Mr. Eoannou learned of the meeting after the fact. After the meeting with Officer Masters, Laima Trincus spoke to both Bello and Lugo, and Bello and Lugo then asked Mr. Eoannou to continue in his representation of them and to give them advice relative to a plea.

There is no evidence that, once Laima Trincus negotiated a deal with the prosecution, Mr. Eoannou continued in his representation of Laima Trincus. Rather, according to Mr. Eoannou, "there was never a time when I [Mr. Eoannou] advised my client or was aware that she [Laima Trincus] would be testifying against these two [Bello and Lugo]." (P. 7). As such, the court does not find that an actual conflict of interest existed at the time of the plea, and, accordingly, the court does not find that there was ineffective assistance of counsel in relation to the guilty

plea entered by Bello. Further, even if there was an actual conflict of interest, the court does not conclude that the conflict adversely affected the voluntary nature of the guilty plea entered by Bello, as full disclosure was made in court, prior to entry of Bello's plea, of the relationship between Mr. Eoannou, Laima Trincus, and Bello. The trial court also expressly asked Bello if he understood the potential conflict, and Bello indicated that he did. Finally, the court informed Bello that if he entered a guilty plea he would be waiving any claim as related to Officer Masters' approach of Laima Trincus. Bello stated that he fully understood the conflict, and that he was prepared to plead guilty. As such, there is nothing in the record that could support a finding that the alleged conflict adversely affected the voluntary nature of the plea. *See Jackson v. Burt,* 877 F.Supp. 389, 394 (E.D.Mich.1995) (in order to prevail on conflict of interest claim in habeas corpus petition, "petitioner must show inconsistent interests between the codefendants, and that the attorney made a choice between alternative courses of action the result being helpful to one client and harmful to the other").

Moreover, there is no claim by Bello, or indication in the record, that Eoannou in any way facilitated the deal for Trincus so as to constitute an undisclosed breach of loyalty to Bello. The potential conflict, if any, would therefore not have materialized until Bello had decided to reject the plea and proceed to trial. At that point, Eoannou's representation of either Trincus or Bello would arguably have had to end absent a further waiver from both defendants, assuming the trial court permitted such joint representation. This analysis clearly demonstrates that, at the time of Bello's plea, no disqualifying conflict had actually occurred. Assuming, *arguendo*, a disqualification barring Eoannou's further participation, this record supports Judge Drury's finding that Bello voluntarily and intelligently waived the potential disqualification. *See Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

Bello's remaining two grounds for relief also relate to his claim that he did not have effective assistance of counsel because of the alleged conflict of interest. As stated above, the court does not find that there was ineffective assistance of counsel in relation to the guilty plea entered by Bello based on an actual conflict of interest, or by such conflict adversely affecting the voluntariness of the plea. As such, these grounds also do not support valid claims for relief.

## CONCLUSION

Based on the above discussion, Petitioner's habeas corpus petition should be DISMISSED. Further, Respondent's motion for summary judgment should be DISMISSED as moot.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the Petitioner and Respondent.

SO ORDERED.

DATED: April 20th, 1995
Buffalo, New York